The last case on the call this morning is number 120745, Lawler v. University of Chicago Medical Center, agenda number 10. This was moved over from oral argument from last week. Counsel, are you ready? You may proceed. May it please the court. I'm Scott Howey, and I represent defendants at the Lance, Dr. Rama Jager and University Retina and Macular Associates. I'm privileged this morning to be speaking for all the defendants. This appeal concerns wrongful death claims that were filed for medical malpractice filed more than four years after the medical care had issued. That much is undisputed. It's also undisputed that those wrongful death claims did not accrue within the four-year statute of approach period. Those undisputed facts were the reason that the circuit court dismissed the wrongful death claims as untimely filing. But the appellate court concluded that the relation-backed statute, section 2616B of the Code of Civil Procedure, could preserve causes of action from the effect of the statute of repose, even if those causes of action had not accrued before being extinguished by the repose statute. That conclusion is at odds with the law. The relation-backed statute contains language that reveals its limited legislative purpose and is not broad enough to have the effect that the appellate court has given. The relation-backed statute preserves claims that have accrued already, but it doesn't have the power to hold the door open to let untimely, premature claims accrue. Indeed, this court has rejected the notion that a premature claim has any preservative effect against the statute of repose. And this is especially true of the particular statute of repose at issue here for medical malpractice claims, a statute of repose with a well-documented purpose that goes beyond what a statute of limitations is intended to do. The statute of repose cannot achieve the public policy goals that the General Assembly set for it if it is held to be subject and to be subject to the exception imposed by the relation-backed statute. Counselor, are the policy reasons that caused the legislature to enact the Med-Mal statute of repose, are they present here? Is there any prejudice here at all? Indeed, the goals that the General Assembly had in enacting the statute of repose are very much at issue here. They always are, even in a case involving the time period at issue here and the non-accrual of the cause of action. To speak to your question about prejudice, prejudice is only one of the concerns that have been raised with respect to the general statute, section 13.2.12, of which the statute of repose is a part. Prejudice is not an issue that this court has ever recognized as being relevant to the interpretation. I mentioned that in the context of public policy because the parties here have been litigating these exact same claims for several years, haven't they? That's correct, Your Honor, and they have. It's just when Prusak died it became a wrongful death case. That's correct. That is the point at which the wrongful death claim accrued, obviously because of the facts of this case, sometimes subsequent to the time at which the original negligence cause of action accrued, the time to file portion of this case. It's important to recognize when we speak of public policy, I've been able to overhear this morning's arguments with a great deal of discussion of statutory interpretation and construction, a lot of discussion of public policy, and there are very few statutes, certainly very few sections of the Code of Civil Procedure with such a well-documented history behind the public policy. And this court has frequently turned back to the 1970s circumstances that the General Assembly was considering at the time that it enacted this statute of repose. Recall that the statute of repose is a corrective of sorts to the discovery rule. Once it was determined that the discovery rule had impaired the impact of the statute of limitations substantially enough, that it called for a greater protection, this court has repeatedly recognized that the General Assembly was looking to the medical malpractice crisis of the 1970s in an attempt to solve what it perceived as a crisis in the provision of health care in the state of Illinois. I don't need to review that with this court in any detail, but because this court has repeatedly recognized that it was the General Assembly's perception that malpractice insurers were being driven from the state by the specter of unlimited potential liability without any end in sight because of the promulgation of the discovery rule as an exception to the statute of limitations. And the statute of repose was intended, as its name suggests, as all repose statutes are, to give a measure of certitude to those malpractice insurers and potential defendants knowing that there would be an end to liability despite the application of the discovery rule. That's the purpose of any statute of repose. It's the meaning of the word repose even outside the legal or statutory context. So if the individual doesn't die within four years of the alleged negligence, the statute of repose then absolutely bars any kind of recovery? That's correct, Your Honor. That's the nature of statutes of repose, that they provide that certitude by extinguishing the cause of action. And it is certainly conceivable in this instance with this statute or with other statutes of repose that such a statute might extinguish a cause of action before a potential plaintiff has discovered it. Even in some cases, as in this case, it can extinguish a cause of action before that cause of action accrues. And the relation back statute, which is the basis for the appellate court's decision here, doesn't have the power to, as the statute says, preserve a cause of action if that cause of action has already been extinguished even before it accrued. That's in the nature of simply what the meaning of preserve is, which is the word that the General Assembly used in enacting that statute. The statute doesn't define the term preserve, but it doesn't need to. The word has a common and ordinary meaning. And any meaningful understanding of the concept of preservation or preserving a claim has to begin with the understanding of there being a valid and existing claim to begin with. And under the facts of this case, there never was a valid existing cause of action. The cause of action for wrongful death did not accrue at the same time that the plaintiff's original cause of action did. Because of her death more than four years later, there was never a time during the entire four-year repose period during which a wrongful death claim could have been filed. And if the wrongful death claim didn't exist and couldn't have been filed during that time, then it couldn't have been preserved. That's the very nature of the notion of preserving a cause of action is to have a cause of action that already exists in some fashion that can be preserved. What the appellate court did in this case was to change the understanding and adopt a different meaning of the Relation Back statute to suggest that it could do something more than preserve an existing cause of action, but to prop open the door to a cause of action that hadn't accrued, really for the purpose of allowing it to accrue. And that is not only at odds with the language of the Relation Back statute. It's also at odds with the purposes that the General Assembly was attempting to achieve in enacting the statute of repose. The statute of repose is intended to provide that measure of certainty, to allow potential defendants and their malpractice insurers to feel comfortable continuing to do business in the state of Illinois. That was not the situation in the 1970s when the legislature looked at what the liability landscape of the state was and determined that it posed a threat to the continued availability of quality health care within the state. Faced with that situation, the General Assembly had a number of difficult options before it. The one that it chose, the legislative scheme that it chose to enact, was one in which all medical malpractice claims would be barred four years after the medical care had issued. And in enacting the statute of repose, it's important to recognize a distinction between the statute of repose and the statute of limitation. Statutes of repose, on the other hand, have a very different structure, a very different understanding. They are understood to be substantive in nature. The effect is not merely to limit the time in which a claim can be filed, but to substantively extinguish the cause of action to eliminate the right to bring that cause of action. And that held up against the relation back statute, which has by its terms the very limited purpose, the stated expressly limited purpose of preserving a cause of action and for that purpose only in the evocative language of the statute. The statute of repose has to have a more concrete meaning. It has to have a more firm and solid way of precluding a cause of action that hasn't accrued. That is, again, is also part of the nature of statutes of repose in general, not just medical malpractice statutes of repose. This court has recognized in the context of workers' compensation, most recently in the FOLTA versus Ferro engineering case, and also recently in the Edison insurance case that we've cited both in our briefs. Those are cases in which causes of action were barred even before they accrued. The court recognized that, as it's frequently recognized in other contexts, that statutes of repose may very well have that effect. That is a consequence that is sometimes unfortunate to a potential claimant, but is a necessary, sometimes necessary, but certainly acceptable consequence of the statute of repose. Something that is well within the General Assembly's ability to do. It's important to recognize also that, as this court recognized in FOLTA, the substantive nature of the statute of repose gives it that power. This court has frequently recognized that in order to achieve the legislative purpose that the General Assembly had in any statute of repose, it may be necessary to extinguish a cause of action before it's known and, in many cases, even before it has accrued. That is especially so with a particular statute of repose at issue here for medical malpractice. Again, looking to the particular danger and ill that the General Assembly was facing and was attempting to solve. This is a consequence of the particular legislative scheme that the General Assembly chose to enact, a permissible legislative scheme that this court has repeatedly recognized in examining that statute. The General Assembly doesn't have the luxury of making a case-by-case determination as to whether a particular case involves notice or whether a particular individual plaintiff might suffer detriment or a particular individual defendant might be benefited. It paints in broader strokes because it has to. That's the nature of public policy as opposed to individual cases. The policy goal at issue here was an unimpeachable good, an unimpeachable public benefit to protect the availability of quality health care within the state. The possibility that some causes of action might be extinguished before they accrue is a necessary consequence of the scheme the legislature chose. To the extent that the relation back statute is raised in response to this, it simply doesn't have the power to do anything more than preserve a cause of action. That's the language of the statute itself, to preserve an existing cause of action that has already accrued. That cannot be applied to the situation here where the effect would be, as I described it, to hold open the door while a cause of action that is premature is allowed to accrue. That's inconsistent with both the statutory language of the relation back statute and it's at odds with the legislative intent of both statutes. The statute proposed serves a critical role in this unimpeachable public policy, so critical that the General Assembly could not have intended it to yield to relation back, particularly when a claim was extinguished before it accrued, or for the relation back statute to prop open the door to allow premature claims to accrue. That is the effect of the appellate court's decision here. This court should therefore reverse that decision and reinstate the order dismissing the untimely wrongful death claims. I would be happy to address any more questions or concerns the court might have. In the absence, I would ask the court to reverse. Seeing none, thank you, Mr. Howey. Mr. Habeson. Good morning. May it please the court, I'm Keith Habeson. I represent the appellate in this case. And before I engage in my remarks, I want to thank kindly the court and counsel for the accommodation for the scheduling, rescheduling of this argument. I appreciate that. The issue in this case, as we put forth in our brief to your honors, is whether a wrongful death claim added by amendment to a timely filed and pending lawsuit is barred by Section 132-12A if the decedent dies more than four years after her last treatment by the defendants, even if all the allegations of negligence are identical to those first made by the decedent in her original timely complaint. This is a relation-backed statute issue. I didn't hear a lot of talk about it so far. I want to just briefly outline and reemphasize our points here about the relation-backed statute, plain language, and how it applies in this case. The cause of action in an amended pleading shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action can be brought if two things occur. One, the original action was timely. There's no dispute in this case the original action was timely. And the second is that the amended pleading grew out of the same transaction or occurrence set up in the original pleading. There's no dispute about that. Those things are absolutely true. There's nothing else to discuss about this statute applying with those two requirements being met. There's some case law that discusses what this all means. And some of that language is that the defendant's attention was directed within the period of time prescribed or limited of the basis of the claims against them. And that the original complaint supplied the defendants with all the information necessary to prepare its defense to the subsequently asserted claim. The case law says that the cause of action didn't even have to exist at the time the case was filed originally. And it doesn't have to be the same cause of action. This one is. They knew when this case was filed shortly into it that this was a cancer case. It's a lymphoma case. And they knew that she had a recurrence of her lymphoma. So the defendants were not, as a partial answer to your question, Justice Thomas, they were not prejudiced in any way by this amendment. How could they possibly be prejudiced when the liability allegations are identical? And all we've done is substitute a party for an existing cause of action to add a wrongful death claim. The relation to statute has been said to be remedial in nature and should be liberally applied to favor hearing a plaintiff's claim, especially in medical malpractice cases. And it applies both to prescriptions and limitations. And prescriptions has been described as a statute of repose. That is a prescription. It applies to statutes of repose. Now, I'm a little puzzled because I thought I heard the argument from counsel with all respect that the statute of repose is an absolute bar to actions after a certain point in time. With no discussion of the case law that we raised with your honors, I'm going to talk about injury cases first. These are statute of repose cases. Avakian, Castro, Merrick, Kamin, Frigo, Compton are all telecourt cases where the statute of repose was not a bar to an amendment in an injury case that involved a med mal 4-year statute of repose. I guess their argument is that there's a different rule for death, even though the statute doesn't say anything different for death. And the relation back isn't dealt with any differently in death. On that issue, though, what is the transaction or occurrence giving rise to the wrongful death claim? Is it the same for medical malpractice? The transaction or occurrence in this case was the original allegations of negligence. But are they the same for the medical malpractice negligence? I think the statutory scheme and the case law thoroughly treat them the same, particularly those cases that I just mentioned. All those cases were statute of repose cases involving injuries where there were amendments made past the statute of repose. And despite the alleged public policy for the statute of repose, because of the relation back statute, those claims were allowed to proceed, even though they hadn't been originally pled. They were behind the statute of repose. The statute of repose has been overridden by the survival statute. Section 13-209 in the case of O'Brien has allowed survival actions to proceed after the statute of repose has expired. Mr. Hibbersen, how do you respond to the argument back to relation back and to the wording preserve? Well, I think those words are taken out of context of the entire statutory scheme and the case law. If you look at a lot of these cases that are cited in both sides' briefs, there were causes of action that did not exist at the time the original case was filed and did not exist until later on where they were allowed to relate back. And I want to talk specifically, a more direct answer to your question, is why the wrongful death action in this case was not extinguished before she died, which is their argument. And there's a statutory scheme here that involves the survival act, the wrongful death act, and relation back to give your answer to that in the context of the statute of repose. Under the wrongful death act, a timely filed injury case at the time of death, I'm sorry, excuse me, at the time of this case when the injury case was filed, at the time of her death, this patient had a claim that was not time barred and at the time of her death if she had not died, she would have been entitled to pursue her claim. And she did pursue her claim, her claim had been ongoing for a while, as Justice Thomas pointed out. So she had a valid cause of action for herself at the time she died. But the way the survival statute works, there's a survival statute that keeps that alive for the injuries that she sustained up until the time she died. And that claim is transferred, however you want to call it, is transferred, the beneficiaries stand in her shoes. And there's case law beside it. It's the Williams, the Crane, the Bolares, the Edmunds-Kula case, the Moon case, the Murphy case, all stand for this proposition that if the decedent had a valid cause of action at the time she died, she has a valid, her beneficiaries have a valid cause of action to take that over as a wrongful death action. And that's the clear statutory scheme and case law scheme. And especially it's called a derivative claim. That's what the case law says. The wrongful death is a derivative claim with what the patient had as a right at the time she died. Her underlying claim had not been extinguished when she died. It was still alive. And it got transferred timely with a substitution of an executor and an amendment of complaint that complied with the relation back statute. It's the same cause of action. It's grounded on the same wrongful act. That's what all those cases I just referred to stand for. This is not slipping in an entirely distinct claim. That's the verbiage you see in some of these cases where they do find there is no relation back. There are, we cited the Sampolsky case. I know it's not a malpractice case, but it's a wrongful death case that the statute limitations have expired on the wrongful death action at the time that amendment was allowed because it related back to the original pleading file. There is no case that has dealt directly with this issue, but I submit that the entire body of case law and statutory scheme stands for the proposition that the answer to the question raised and an answer by the public court was answered correctly is that this is a clear relation back under the statutory scheme and case law. Are there any unintended consequences if we agree with you? In other words, would we be encouraging plaintiffs in injury cases to delay trial? Well, that's a very good question. I've actually wondered about that myself. First of all, you can only delay it so long, not to be too funny about it, but as long as they complain about how long cases take, they can only go on so long. So, yeah, I mean, could in theory in an isolated case that happen? I guess anything's possible. As a practical matter, I don't see that as a problem. I can also say anecdotally that I've had a number of cases with this exact fact pattern that I've presented where there's been no motion. This is the first time I've ever had a motion where we file a wrongful death. We file wrongful death cases after the statute, after the four-year statute reposed where there's a pending injury case. And it never poses a problem. So that's the answer to the opposite question. Is there a problem with this happening? So, no, I don't think litigants are in a position with the court to deliberately slow things down unless the court allows that to happen. I mean, that's my experience in 30-some years of practice is I can try to slow things down all I want, but if the court doesn't agree with that and I have opposition on the other side, I'm not going to be able to do that. And in large part, these deaths that occur later on after someone's been injured in these cases tend to be deaths that occur relatively soon, and I say, you know, within a few years or so after the initial injury. There are cancer cases in particular. Those are the kind of cases that tend to be like this. So the point is this whole argument that the cause of action for wrongful death was extinguished before she died makes no sense. If you look at the case law and you look at the facts, it couldn't have been extinguished because it didn't accrue until she died. And the relation back statute preserves that action because it was preserved at the time of her death. Those rights transferred to the estate, to the executor, to have an amendment that related back to the identical transaction or occurrence, and we're not even talking about some of this case law where they allege different acts of negligence or a different location or something like that. This is identical with a transference to the executor of an existing viable cause of action that gets converted into a death action by the statutory scheme and case law. The defendants cite a number of cases that try to support the proposition. I didn't discuss them this morning, but I want to go through a few of these. They cite the Hayes and the Aldrich case, which are the third-party contribution and indemnity cases involving a statutory pose as some support for their proposition. But that has nothing to do with what we have here. Those were initially filed third-party indemnity actions where there was a party now suing a party who was already in the case, but that party had never sued them before. So it wasn't a relation back issue. It was a de novo case. If we had filed this case five years after the incident for the first time, those cases would have applied. But they don't apply to this case. They don't have anything to do with this case. The Evanston case, a very interesting case, actually. I read it about three times. There's a little plot going on in that case. That was really a case dealing with whether the statutory pose for attorneys applied to certain allegations made against them, and there was some discussion about some other things. But what's important about the Evanston case, that's the same thing. That was, in essence, a brand-new filing the second time that case was filed. And when the statutory pose was applied to that, clearly it was beyond the statutory pose. So that case doesn't support the appellant's position in this case. The purpose of the statutory pose, there's actually two purposes. We mentioned that in our brief. One is the malpractice crisis, but one, in terms of anything, statutory limitations or repose, is to prevent stale claims. There's no stale claim issue here. The defendants were rolling along litigating the case, and she ends up dying, and we have the blip. Now we have the damages. You have a new part of that because she died, but it's the same case rolling along with the same evidence. I think I'm just going to mention briefly on the, again, I didn't hear anything about it this morning, but there was a lot of this in the briefs. I don't think there's any statutory construction issues here. If you look at the body of case law that's cited in the briefs, the interplay between 13-212 and 2-616 is very clear. It's done all the time. Those are not statutes where you have to say which one is more general, which is more specific, or which one was passed first or which one was passed second. They work in tandem all the time. The appellate courts have been doing that for years. This court has been doing that for years. One does not trump the other. If anything, the relation back statute does trump the statute of repose if you put them together and read them together, as many courts have done, is that as long as those two requirements are met, that the original claims time you filed and the amendment grew out of the same transaction or occurrence, that's order, that's that, and whether it's a statute of repose or statute of limitations doesn't matter by the plain language of the relation back statute, is that those requirements are met. It relates back. And that's based on statute. That's based on public policy. That's based on case law. There should be no question about that. To say that that doesn't apply in this specific fact pattern when it applies in every other fact pattern would be an aberration in the law, which would be an absurd and unjust result. I noticed in the argument of Mr. Howey, he constantly referred to this as a new cause of action. You refer to it as a claim arising out of the same transaction. I think that's a matter of semantics. It truly is, and lawyers and judges are all good at semantics. But wrongful death, you call it new because it didn't exist before. That's true. But in terms of the term of our new cause of action that would be at cross purposes or fail to fulfill the requirements of the relation back statute, which is the original timely filed claim and an amendment that grew out of the same transaction or occurrence, it's not new in that sense. So it depends on how you're applying the word new. Is it new because it's a wrongful death case? Yes. You could say that about every relation back case there is. There's a new cause of action when you allege some different acts of negligence that occur back from the original complaint. But those things relate back all the time. You can call those new. An amended complaint you can call new. But I don't think in substance and principle under the law that exists, both case law and the statutes, that it's considered new in opposition to what the principle of relation back is supposed to do. Unless your honors have any other questions, I appreciate your attention. I would ask that you respectfully affirm the appellate court. I think that would be the only sound and just result in this case. Thank you. Thank you. Thank you. Reply. May it please the court. What's the meaning of the word new? Well, it can have a number of different meanings. And in many respects, these are not new claims or causes of action, which are termed interchangeably. It's not a new case. In some senses, it's not a new set of facts but for the death of the individual. But it is new in one important respect. It's new in that it has newly accrued. The wrongful death claim doesn't exist. It can't be filed and is subject to nearly automatic dismissal. It's filed prior to the time that it accrues, prior to the death of the individual in question. So to talk about something as being new isn't really very helpful. It's not a term that the courts use in discussing relation back. What we are talking about in this instance is the accrual of the wrongful death claim. That makes all the difference. That's the distinguishing fact between this case and all those cases that Mr. Haybison just gave you in the virtual spring site, cases in which it was permissible for a cause of action, for wrongful death to relate back. Those are cases in which the wrongful death claim was not extinguished prior to the time it accrued, a circumstance that this court has always repeatedly recognized as being a proper basis for dismissal, even if the claim wasn't known to the plaintiff, even if it hadn't even accrued at the time that it was extinguished. What's not at issue in this case? A good deal of what the plaintiff's counsel just discussed. The question of whether the Survival Act is at issue and whether the relation back statute applies to that is simply not before this court. The survival claims are not in dispute. They remain before the trial court and are not under challenge on any basis that's currently being discussed to this court. The survival claim, in fact, we can see is essentially the same claim that accrued prior to the time that it was extinguished. All those claims, they've changed in a procedural fashion because the Survival Act allows them to for the purpose of avoiding, so that the actions don't abate upon the death of the individual who filed them. But those are the same claims. They didn't accrue at a different point in time. They certainly didn't accrue after the time that the statute of repose had expired, which is true of the wrongful death claims, and that's the distinction there. Survival Act claims are not in dispute and they're not before this court. Likewise, the question of whether a cause of action existed at the time that the original cause of action was filed is also not before this court. And counsel discussed a few cases in which that was the case. Cases that hold that a cause of action need not exist at the time the original complaint was filed. And that's not disputed either. What's relevant is not whether the cause of action, in this case wrongful death, existed at the time the initial complaint was filed. It can still relate back under other circumstances, even if it didn't exist at that time. What's critical is whether it existed at the time that it was extinguished, at the time that the statute of repose expired. So there may be situations, there certainly are cases, and counsel cited some of them, in which the wrongful death claim may have accrued, did accrue, during the four years following the medical care at issue. It may not have existed at the time the initial complaint was filed, but as long as it existed in some fashion during that period of time, that repose period, then it can relate back to the filing of the original complaint. Mr. Howard, what's your thoughts on Mr. Habes' comment that he's never seen this in 30 years of practice, where there has been a motion? I think that explains, Your Honor, why this is a case of first impression. It may have been that previous counsel didn't suggest this idea. It may be that we are the legal innovators who are the first to bring it. I'm not the trial counsel. I can't take credit for the initial idea. But that's what makes this a case of first impression. It may be that it hasn't been brought. It may be that it hasn't reached the level of appeal. But when you compare the statutes that are at issue here, what the relation back statute does by its own terms, and what the statute of repose is intended to do by its long recognized and well documented purpose, this is the only result. One of the lesser used rules of statutory construction is absurdity. It may have been the last word that Mr. Habes used. Would this be an absurd result? Not at all, Your Honor. This would be consistent with what the General Assembly wished. This would provide that a cause of action can't be preserved unless it exists in some fashion to be preserved. And that is critical because that involves one of the most common and most well respected principles of statutory construction. And that is to look to the language of the statute. And the language of Section 2616B is much broader than the two elements that Mr. Habeisen discussed this morning. If you read the entire statutory section, and it's a long read, I will grant you that, the end of that section sets out the purpose of this statute in words that couldn't be more clear, and are remarkable in their limiting fashion. This statute is meant for the purpose of preserving, and I quote, for the purpose of preserving the cause of action, cross-claim, or defense set up in the amended pleading, and for that purpose only. So preservation is the key term here. It is for the purpose of preserving the cause of action, or claim, if you choose to use that term. Preservation is something counsel didn't discuss this morning, other than the preservation of claims that may or may not have existed at the time that the original complaint was filed. But the key point in time is not the filing of the original complaint. For purposes of understanding relation back and whether this cause of action can be preserved, it's whether it existed at all, whether it existed in a fashion that could be preserved. Preservation has a common and ordinary meaning. It has to contemplate the concept of existence. I don't want to get too ontological or existential, but that's what preserve means. Something that doesn't exist, can't be filed, as the wrongful death claims here could not have been filed at any time during the four-year repose period, can't be preserved by something that comes after that repose period. This is a case of first impression. It's not affected or influenced by those cases in which causes of action or claims did accrue within the repose period. It's also not affected by cases such as Simpolski, which counsel relies upon heavily, which did not involve, as he concedes, didn't involve a medical malpractice claim, and more importantly, therefore, didn't involve a medical malpractice statute of repose. It certainly didn't involve any claim that was extinguished by a statute of repose before it could accrue. That is the critical difference in this case. That is the question of first impression for this court. I ask that when this court answers that question, it look to the General Assembly's intentions, the unimpeachable public policy goal that it was trying to achieve, and respect that goal when it interprets the two statutes that the General Assembly passed. That it respect not just legislative intent, but the statutory language and the stated express limited purpose of the relation back statute. It's being too narrow to apply to a claim that hasn't accrued before it is extinguished, as in this case. I again would ask that this court reverse the decision of the appellate court and reinstate the order dismissing the wrongful death claims as I find them. Thank you. Thank you. Case number 120725, Lawler v. University of Chicago Medical Center, will be taken under advisement as agenda number 10. Mr. Hawley, Mr. Havison, we thank you for your arguments this morning. You are excused.